## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, through her father JOHN DOE, | : | |
| Plaintiff, | : | |
| vs. | : | |
| | : | Case No.: 2:13-cv-00486-GLF-MRA |
| KEVIN C. BOLLAERT, an individual; | : | |
| ERIC S. CHANSON, an individual; | : | Judge Gregory L. Frost |
| ROY E. CHANSON, an individual; | : | |
| AMY L. CHANSON, an individual; BLUE | : | **PLAINTIFF'S OPPOSITION TO** |
| MIST MEDIA, LLC, a limited-liability | | **DEFENDANTS ROY AND AMY** |
| company of unknown origin, d/b/a | : | **CHANSON'S MOTION TO DISMISS** |
| "YOUGOTPOSTED"; and "JOHN DOE," an | : | **COMPLAINT PURSUANT TO FED. R. CIV.** |
| individual, | | **P. 12(b)(2)** |
| | : | |
| Defendants. | : | |

### Memorandum in Support of Plaintiff's Opposition to Defendants Roy and Amy Chanson's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2)

Plaintiff, Jane Doe, through her father John Doe, hereby files this Opposition to Defendants Roy and Amy Chanson's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(2). Plaintiff opposes the Motion as follows:

### I. Introduction

This is a child pornography case. The victim is an Ohio resident (as are many other victims of the defendants' "revenge porn" website).[1] The perpetrators are spread across multiple states, but aimed their relevant tortious conduct at a child who lives in Ohio, who felt all of the harm in Ohio, and who has a right to seek redress in Ohio. Some

---

[1] A "revenge porn" website is one that publishes "identifiable nude pictures of someone else online without the victim's permission, intending to cause emotional distress or humiliation." See *Bill Outlaws growing problem of 'revenge porn*,' SFGate.com, Aug. 15, 2013 *found at http://www.sfgate.com/news/article/Bill-outlaws-growing-problem-of-revenge-porn-4735963.php* (last visited August 17, 2013).

of the defendants in this scheme, including those that filed the instant Motion to Dismiss, demand that the victim travel to *them* in order to seek redress.  Meanwhile, members of the conspiracy are scattered about the country, from California to Illinois to New Jersey, with no true established focal point.  Accordingly, the Chansons argue that the proper course of conduct for their victim would be to file lawsuits in multiple jurisdictions, where it would be more *convenient* and *comfortable* for the child pornographers.  While the Chansons may find it inconvenient to be held accountable for their actions in Ohio, they well knew that they were victimizing Ohio residents and causing harm in the Buckeye State.  In this contest of "*who should be inconvenienced*?", the choice is between a child and a *child pornographer*. The choice is clear.

## II.  <u>Statement of Facts</u>

On May 21, 2013, Plaintiff filed a Complaint alleging multiple violations of 18 U.S.C. § 2251, *et seq.*, pertaining to the sexual exploitation of children and related violations of Ohio law against the named Defendants. Defendants Kevin Bollaert, Eric S. Chanson, Roy E. Chanson, Amy L. Chanson, and Blue Mist Media, are jointly, severally, and in concert with one another, engaged in the commercial distribution of child pornography. *See* Complaint, ECF #2 at 2. Defendants conduct their enterprise electronically, using computer servers and equipment across the country. These Defendants monetize their sites through advertising revenue and other currently unverified sources of income.[2]

---

[2] This likely includes a scheme where Defendants are the sole providers of image removal services for their website, wherein they will remove the names and nude images of individuals from their website who choose to pay a substantial fee. The site, called "Changemyreputation.com" is suspected to be owned by the Chansons, and this fact will be explored in discovery.

In addition to posting the photos online, Defendants also engage in a form of stalking.  They identify the subjects of the photos by their full names, their hometowns, and link to their personal Facebook pages. *See* Complaint, ECF #2 at page 3.  This compounds the injury for each victim, because Defendants specifically target each person, with precision focus, and ensure that the brunt of the harm takes place right smack dab on their front doorstep.  Visitors to Defendants' website search for victims' photographs by clicking on a link for the corresponding state of residence.  Those who wish to submit photos to the website *must* fill out a form containing the identifying information of the victim.  The identifying information, such as name, location, and Facebook page are *required* prior to the photos being posted, encouraging the outing and ongoing harassment of the victims and rejecting anonymous photographs.

Defendants purposefully directed their activities at this particular child, with the precise knowledge that she lived in Ohio, and with the precise knowledge that she would suffer harm in Ohio. ECF #2 at 3.  On Defendants' website, YouGotPosted/Ugotposted, Defendants tagged and categorized the photos by the residences of the photo's subjects, and specifically targeted the Plaintiff (an Ohio resident) and dozens of other Ohioans. (See Ohio YouGotPosted page at <http://ugotposted.com/category/ohio/>).  Visitors to the website click on the name of each state and view nude photos featuring men and women by location, prominently identified by full name and hometown.  By their own admission, Defendants Roy and Amy Chanson knowingly and actively participated in the posting and editing of the photos and the website.  Because Mr. and Mrs. Chanson, in partnership with the other Defendants, directed tortious activities at the State of Ohio with the reasonable knowledge that Plaintiff (and frankly all of the enterprise's Ohio

victims) would feel injury there, this Court should exercise personal jurisdiction over them.

### III.  Legal Argument

In the event the court bases its jurisdictional analysis only on the pleadings without outside evidence, the plaintiff needs only make a *prima facie* showing of jurisdiction. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The plaintiff may meet this burden by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction." *Id.*, *quoting Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (6th Cir. 1996).  In this case, Plaintiff has done so.

Where a federal question gives rise to federal subject matter jurisdiction, personal jurisdiction exists if the defendant may be served under the forum state's long-arm statute and if the exercise of jurisdiction will not violate the defendant's due process rights. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992). Ohio's federal courts consistently focus on whether significant minimum contacts exist so as not to offend "traditional notions of fair play and substantial justice." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002), *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 90 L. Ed. 95, 66 S.Ct. 154 (1945). Ohio's long-arm statute permits personal jurisdiction over, *inter alia*, a person who transacts business in the state, causes tortious injury by an act or omission in the state, or causes tortious injury in Ohio by an act outside the state with the purpose of *injuring a person in which he reasonably expects will feel injury within Ohio*. Ohio Rev. Code § 2307.382.

For specific jurisdiction, Ohio courts employ a three-part test: 1) the defendant must purposefully avail himself to acting or causing interference in the forum state; 2) the cause of action must arise from the defendant's activities in the forum state; and 3) the acts or consequences caused by the defendant must be substantially connected to the forum state in order to make the exercise of jurisdiction reasonable. *Caphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000), *quoting Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

This Court may exercise personal jurisdiction over Defendants Roy and Amy Chanson. They purposefully availed themselves of Ohio jurisdiction by intentionally assisting in victimizing an Ohio child, specifically aiming their tortious acts against Plaintiff in her home state of Ohio, and indeed in her very *hometown*.  The Chansons and other Defendants caused to be published lascivious, sexually explicit photos of Plaintiff, an Ohio child, and went so far as to post the child's "profile page" that they created for her—to target her, to harm her, and to ensure that the harm was visited upon her in her very hometown.  There can be no question that Defendants knew that this child lived in Ohio, and no question that they posted her photographs online, knowing that she would feel the brunt of the harm in this state. Roy and Amy Chanson's acts are substantially connected to the forum state, and the Court's jurisdiction over them would be reasonable; in fact, a contrary result would be most unreasonable.

**A. Defendants Roy and Amy Chanson purposefully availed themselves to personal jurisdiction in Ohio.**

A plaintiff may satisfy purposeful availment through the effects test. *Calder v. Jones*, 465 U.S. 783 (1984).  The effects test requires a plaintiff show that the defendant

1) committed an intentional act, 2) that was expressly aimed at the forum state and 3) caused harm that the defendant knew or should have known would be suffered in the forum state. *Mielcarek v. Jackson*, 2012 U.S. Dist. LEXIS 144006, *14 (S.D. Ohio 2012), *citing Stolle Mach. Co., LLC v. RAM Precision Indus.*, No. 3:10-cv-155, 2011 U.S. Dist. LEXIS 144662, 2011 WL 6293323, at *8 (S.D. Ohio Dec. 15, 2011). The existence of intentional tortious conduct "enhances" a party's other contacts with the forum state for the purposes of a purposeful availment analysis. *Air Prods. & Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 552 (6th Cir. 2007).

If a website is "interactive to a degree that reveals specifically intended interaction with the resident of the state," the operation of a website will constitute purposeful availment of the privilege of operation in Ohio. *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002), *quoting Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). "A website purposely avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Davis v. Spriggs*, 2010 Ohio 5802 ¶ 46 (Ohio 2010), *citing Neogen Corp.*, 282 F.3d at 890. The fact that a website regularly chooses to do business with Ohio residents, and which has an entire "Ohio" page is sufficient to show purposeful availment. *Bird*, 289 F.3d at 875. In this case, the website has an entire page devoted to the victimizing Ohio residents by posting "revenge porn" or involuntary displays of sexually explicit images of the victims. **See Ohio Page, Exhibit A and URL at** <http://ugotposted.com/category/ohio/>.

Similar websites, which display images of individuals, have been subject to personal jurisdiction in Ohio courts under the State's long-arm statute. In a case

6

remarkably similar to this one, *Davis v. Spriggs*, the defendant-appellant, Claudia Spriggs, found that her ex-husband posted her intimate photographs on a foreign website. 2010 Ohio 5802 ¶6.  Spriggs brought various claims against the website, but the trial court dismissed them for lack of personal jurisdiction *Id*. ¶¶ 10-13.  On appeal, the Ohio Court of Appeals found that the website defendant was a commercial enterprise and, by publishing images in Ohio, derived an economic benefit from the state. *Id*. ¶¶ 58-60. Even though Defendants' site does not charge a membership fee, the traffic it obtains from its content and its visibility in search engines is the legal equivalent of money.[3] None of the defendants' declarations contend that YouGotPosted is a non-commercial website or anything other than a commercial enterprise designed to exploit its victims by publishing stolen sexually explicit images of them –whether they are adults or children. It makes no difference to these Defendants.  Exploitation and harassment are their stock and trade.  Now that an Ohio resident seeks redress, they complain that they might be "inconvenienced" by having to defend themselves in the home state of a child that they

---

[3] The United States District Court for the Southern District of California has previously addressed the issue of what commercial benefit a free service obtains from distributing its content.  That Court's analysis, which is particularly salient in this situation, is republished here:

> Given that Scribd offers nothing to its users other than content, some copyrighted, some not, it's far easier to presume that infringing content boosts its subscriber base, and with that, its advertising revenues — even if the gains are marginal. Imagine, for example, if a Scribd subscriber got her hands on *Harry Potter* page proofs prior to a book's release and uploaded them to the site; there's no doubt that Scribd would receive heightened traffic during the time those proofs were available for free download.

*Williams v. Scribd, Inc*., Case No. 09-cv-1836, 2010 U.S. Dist. LEXIS 90496 at *26-27 (S.D. Cal. June 23, 2010) (finding that Scribd, a free service for documents to be viewed and downloaded online, obtained a financial benefit from increased Internet traffic because of the content it provided).

victimized. YouGotPosted and its operators are subject to the Ohio long-arm statute for their willful targeting of Ohioans.

Defendants Roy and any Amy Chanson availed themselves of Ohio jurisdiction when they published the child Plaintiff's photo on the Internet.[4] Defendants own and run YouGotPosted/Ugotposted under both domain names. ECF #2 at 9 ¶28. Navigating to <yougotposted.com> redirects to <ugotposted.com>. YouGotPosted/Ugotposted specifically aimed its activities at Ohio.[5] Defendants actively solicit sexually-oriented photos through several invitations on their site to "Post Nudes," including both a tab at the top of the front page and a large, pink-highlighted link located on the right of every page. **See Screenshot of Ohio Page, Exhibit A.** The "categories" menu along the right side of every page of the site contains clickable links to various states, including Ohio. **See Exhibit A.** This feature for sorting and seeking out Ohio victims of the site is intrinsic to its operation and placed on the site by Defendants. The Ohio link directs users to photos of subjects from Ohio, identifying each by full name and city. **See Exhibit A.**

Before posting victims' photos online, Defendants manually alter the content prior to publishing it by inserting their watermark onto each image, including those featuring Plaintiff.[6] ECF #2 ¶ 34-35. Defendants then tag the photos based on personal information of the victims in order to categorize them based on where the victims live.

---

[4] Note that they did not merely publish the photos, but solicited them, selected them, published them, assigned the victim's name and hometown to them, and placed their own watermark over them.

[5] http://ugotposted.com/category/ohio/

[6] This is an act of unmitigated gall. The Defendants, including Roy and Amy Chanson, do this because they are concerned that third parties might steal the images and use them on their own websites. Apparently, thieves themselves, the Defendants do not wish to have other parties steal their ill-gotten child pornography.

ECF #2 ¶ 33.  By their own admission, Defendants Roy and Amy Chanson engaged in this editing process. *See* Decl. of Ronald D. Green, ¶¶11-15.

Defendants' categorization of the photos by the victims' hometowns shows that Defendants know exactly where the harm of their actions will be felt. In fact, the purpose of posting the photos with the full names, cities, states, and links to Facebook profiles of the subjects suggests that Defendants wanted no mistake in pinpointing the exact identities of each and every unsuspecting victim whose nude photo was plastered on the Web, including that of the Plaintiff.

When Defendants intentionally posted the lascivious child pornographic photos of Plaintiff, identifying her by her full name, her hometown in Ohio, and her Facebook profile, they did so with full knowledge and the intent that their behavior would specifically harm her right at her front doorstep – in Ohio.  Through their actions, Defendants expected that the child's face and online social networking profiles would be inextricably connected to sexually explicit photos of her, causing shame, embarrassment, and ridicule (or worse) among those who knew her.  Under the *Calder* effects test, Roy and Amy Chanson purposefully availed themselves to jurisdiction in Ohio when they assisted the other Defendants in posting photos to YouGotPosted.

Defendants Roy and Amy Chanson materially assisted Defendant Eric Chanson in operating YouGotPosted. *See* Complaint, ECF # 2 at 5-6.  Now that they have been sued, Defendants Roy and Amy Chanson deny any involvement with YouGotPosted (*see generally*, Defendants Roy and Amy Chanson's Motion to Dismiss, ECF #9).  However, when it suited them, they claimed a far more active involvement.  Prior to filing any suits against Defendants, an attorney for the one of the law firms representing Plaintiff spoke

to the Defendants in this action, including Roy and Amy Chanson. Roy and Amy Chanson stated that they not only knew about the website, but *actively assisted with its operations and administration*. *See* Declaration of Ronald D. Green, ¶ 11, and Declaration of James McGibney, ¶¶ 9-10. Defendants Roy and Amy Chanson are knowing participants in the operation of YouGotPosted, and admitted that they engaged in editing of the photos themselves. Because Ohio jurisdiction over issues involving YouGotPosted is proper, jurisdiction over Roy and Amy Chanson, as editors of the website, is also proper. Accordingly, Roy and Amy Chanson, in assisting the owners and operators of YouGotPosted, have purposefully availed themselves to jurisdiction in Ohio.

**B. Plaintiff's causes of action arise from Defendants Amy and Roy Chanson's activities directed at Ohio.**

Where a defendant's contacts with the forum state are related to the facts of the controversy, then the cause of action has arisen from the contacts. *Id.*, *quoting Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). This criterion requires only that the cause of action have a substantial connection with the defendant's in-state activities. *Id.*, *quoting Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989). The "arising from" criterion is a "lenient standard." *Id.* "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that contact." *Caphalon Corp.*, 228 F.3d at 723-24, *quoting Southern Machine*, 401 F.2d at 384 n. 29.

Under Ohio law, the facts alleged in the Complaint are deemed to have occurred within the State of Ohio. The child pornographic images of Plaintiff were seen by Plaintiff and known to her while she was an Ohio resident, creating the basis of this

10

litigation. Legally, because the images published on YouGotPosted by the Defendants were seen by at least one Ohioan, the photographs were published within Ohio. *Davis*, 2010 Ohio 5802 ¶ 59 (holding that because Ohioans saw images that were published on the Internet, "[t]he photographs were thus published in Ohio"). Furthermore, the Defendants categorized the photographs into different states – including Ohio. For someone to publish a sexually explicit photograph of an Ohio child, edit that photograph to add in their own tradename, then publish the photograph and list the child's name, and hometown – and then claim a lack of personal jurisdiction, simply boggles the mind.

As shown *supra*, Defendants regularly engaged in collecting and soliciting photos from Ohio residents. Defendants posted Plaintiff's photo on the website after receiving the image from Plaintiff's ex-boyfriend, Defendant John Roe (another Ohioan). *See* Complaint, ECF # 2 at ¶ 13. Defendants, including Roy and Amy Chanson, knew or should have known Plaintiff lived in Ohio, as they required that John Roe provide information as a condition of distributing Plaintiff's images. Defendants posted Plaintiff's photo along with her full name and the Ohio city in which she resides, and associated it with an index term categorizing it with other entries from the state. Based upon Roy and Amy Chanson's own words and claims, they engage in editing of the photographs.[7]

---

[7] Whether Roy and/or Amy Chanson actually edited these particular photographs of this particular child is unknown before discovery. Nevertheless, their own admissions support the claim that they are knowing and willful participants in this enterprise, and they should not be set loose simply because they have raised the uncreative defense of "we didn't do it." When it served them, they claimed to be involved in operations at Yougotposted/Ugotposted. Decl. of Green, ¶11. Now that they have learned that their actions may subject them to liability, they claim complete ignorance and uninvolvement. At the very least, they should submit themselves to discovery.

Plaintiff's cause of action relates directly to Defendants' acts with Ohio. Therefore, the second factor of the three-part specific jurisdiction analysis is satisfied.

**C. This Court may reasonably exercise jurisdiction over Defendants Roy and Amy Chanson.**

Finally, an exercise of jurisdiction must be reasonable in light of the connection alleged to exist. *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  If the court finds that the first two elements exist, there is a presumption that the third factor is satisfied. *Compuserve, Inc.*, 89 F.3d at 1268.  The court will consider several factors, including the burden on the defendant, the forum state's interests, the plaintiff's interests, and other states' interests in an "efficient resolution of the controversies." *Id., quoting American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988).

Because the first two elements of the three-part test are satisfied, there is a presumption that Ohio's personal jurisdiction over Roy and Amy Chanson is reasonable. However, even if reasonableness were not presumed, Plaintiff can show that jurisdiction is reasonable. Defendants virtually "carpet bomb" Ohio with a wave of vicimization as can be seen at <http://ugotposted.com/category/ohio/>.  Ohioan after Ohioan finds herself (or himself) victimized by these Defendants, each of them targeted by name with as much personal information about them as the Defendants can muster.  If Ohio's courts will offer no comfort to the Ohio victims, then who reasonably will?  It is in Ohio's interest to its citizens to protect its minors from sexual exploitation online.  Defendants exposed Plaintiff, a minor, by posting the graphic lascivious exhibition of her genital or pubic area on their website.  Because the child in question is a resident of Ohio, as is Defendant

John Roe (from whom the other Defendants obtained the photos), Ohio has a direct interest in the resolution of this Complaint.

Additionally, Plaintiff is a minor who has brought this complaint through her father over Defendants' distribution of lewd and lascivious, sexually explicit images of her. Because Plaintiff is under 18, it is in her best interest to litigate her cause of action in the state where she is domiciled, Ohio. Should this child be forced to chase each individual Defendant in each of these jurisdictions? Or should this child receive justice here—where all of the harm is focused and felt? All of the actions leading up to the posting of the photo occurred in Ohio: the photo was taken in Ohio, and Defendant Roe distributed the photo from Ohio. *See* Complaint, ECF #2, at 3 and 5 ¶3. As operators of YouGotPosted, Roy and Amy Chanson, in concert with the other Defendants, posted the photo online with the knowledge that Plaintiff lives in Ohio. Therefore, it is just that the lawsuit remain in Ohio. On the other hand, dismissing this case for lack of personal jurisdiction would require a victimized child to travel to unknown locales – either Arizona, New Jersey, California, Illinois, or whatever other state the Chansons and their co-conspirators claim would be proper. Is it just or proper that a child should be forced to travel far from home, when the victimization of that child took place in Ohio and all of the effects of the victimization were in Ohio? The audacity of these Defendants seems to know no bounds.

In weighing these factors, the burden on Defendants is light in comparison, as most of the evidence would be located in Ohio. Considering the totality of these circumstances, specific jurisdiction over Mr. and Mrs. Chanson is reasonable – and any other determination would be grossly unjust.

**D. This Court may exercise jurisdiction over Defendants Roy and Amy Chanson through Ohio's Long-Arm Statute.**

Where a defendant's act causes tortious injury in Ohio, and where the defendant regularly conducts activity in Ohio, the state's long-arm statute and civil process rule apply. *NCR Corp. v. PC Connection, Inc.*, 384 F.Supp.2d 1152, 1157 (S.D. Ohio 2005); see also *Estate of Poole v. Grosser*, 134 Ohio App. 3d 386, 731 N.E.2d 226, 229 (Ohio Ct. App. 1999). Specifically, Ohio's long-arm statute states that a defendant may be hauled into Ohio courts by "(6) Causing tortious injury to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A)(6). Also relevant is section (4) of the long-arm statute, which allows for personal jurisdiction when a defendant causes "tortious injury in this state by an act or omission outside the state if he regularly does or solicits business, or engages in any other persistent course of conduct […] in this state." Ohio Rev. Code § 2307.382(A)(4). Either section of the Ohio long-arm statute supports a finding that personal jurisdiction over Roy and Amy Chanson is proper.

Roy and Amy Chanson knew Plaintiff resided in Ohio because her location was *required* to post her images. The Defendants' unlawful commercial child pornography enterprise categorized Plaintiff as an Ohio resident. Since Defendants knew full well that Plaintiff would feel injury within the forum state when they posted a series of sexually explicit photographs of her on YouGotPosted, the Court has specific personal jurisdiction over the Chansons under Section (6) of the Ohio long-arm statute. In this case, as editors of the website, Roy and Amy Chanson would have known where Plaintiff lived even if

they conducted no inquiry into her whereabouts. Her location was *required* to post the images of her. Defendants placed Plaintiff's photo under the Ohio tag on YouGotPosted, *proving* that they *knew* where she lived. In addition, Defendants post personal information of all of the subjects whose photos appear on the website, including links to Facebook pages, so that visitors of the site may contact them. Defendants, including Roy and Amy Chanson, fully knew that the subjects of the photos on their website are injured in their home state. Indeed, Defendants gathered the location of each victim before posting the images. This makes it all but certain that the site's operators knew precisely where all of their victims were located, and specifically sought to harm them right here at home – in Ohio. Otherwise, what purpose is served by displaying the victims' name and hometown? Thus, Roy and Amy Chanson knew that their tortious acts outside of the state would injure Plaintiff in Ohio, and Section (6) of the Ohio long-arm statute thus authorizes specific jurisdiction over the Chansons.

The Court also has specific jurisdiction over Roy and Amy Chanson under section (4) of the long-arm statute, because the Chansons' tortious activities outside the state caused injury to Plaintiff in Ohio. One of three factors must be satisfied in order to meet the criteria under section (4): the defendant 1) "regularly does or solicits business"; 2) "engages in any other persistent course of conduct"; or 3) "derives substantial revenue from goods used or consumed or services rendered in this state." Ohio Rev. Code §2307.382(A)(4). A website that is a commercial enterprise and has been published in Ohio is said to have sufficient minimum contacts within the state to be subject to jurisdiction there. *Davis*, 2010 Ohio 5802 at ¶ 60.

YouGotPosted is a commercial website from which the operators regularly solicit visitors to submit nude photos and from which Defendants gleefully wreak havoc on the lives of men, women, and children nationwide. See "A Victim Speaks: Standing Up to a Revenge Porn Tormentor," attached as **Exhibit B.** The menu tags on the right side of the front page feature clickable links to several states, including Ohio, encouraging and targeting those states for submissions. **Exhibit A.** Defendants derive a pecuniary benefit from these photos, including Plaintiff's, to advertise and promote their services through the site. Through the website, Defendants regularly and persistently solicit business from Ohio residents, satisfying both subparts 1 and 2. Thus, the application of Section (4) of the Ohio long-arm statute supports specific jurisdiction over Roy and Amy Chanson.

**E. Because Defendants Roy and Amy Chanson failed to comply with the safe-harbor requirement of Rule 11 and Plaintiff can show reasonable pre-suit investigation, this Court should deny Defendants' request for sanctions.**

A district court may award sanctions under Rule 11 of the Federal Rules of Civil Procedure or through its inherent powers upon finding that an attorney or party acted in bad faith. *First Bank v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). In order to award attorneys fees under the bad faith exception, a district court must find that the claims were meritless, that the party's counsel knew or should have known of the claims' lack of merit, and that the motive for filing the suit was for an improper purpose. *Id.*, *quoting Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997). Only after one party files a Rule 11 *motion* alleging that a claim is frivolous – and not merely an allegation of impropriety – the burden shifts to the non-moving part to show that it made a reasonable pre-suit investigation. *Clark v. Walt*

16

*Disney Co.*, 748 F.Supp.2d 792, 797-98 (S.D. Ohio 2010), *citing Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1368 (Fed. Cir. 2007).

1.      **Defendants' Request for Sanctions Under Rule 11 should be denied because Defendants Roy and Amy Chanson never served Plaintiff with a copy of the motion.**

Rule 11 requires that the moving party serve a copy of the motion 21 days prior to filing the motion with the court. Fed. R. Civ. P. 11(c)(2). The U.S. Court of Appeals for the Sixth Circuit held that this rule is "unquestionably explicit," and that failure to comply with 21-day safe harbor requirement is grounds for denying the motion. *Ridder v. City of Springfield*, 109 F.3d 288, 294 (6th Cir. 1997). A defendant's mere threats to seek sanctions are not enough to meet the requirement that an actual motion for sanctions must be served 21 days prior to filing. *Miller v. Credit Collection Servs.*, 200 F.R.D. 379, 381 (S.D. Ohio 2000).

As of the filing of this opposition, Plaintiff has not received a copy of the Rule 11 motion for sanctions for Defendants, nor any other communication indicating that Roy and Amy Chanson would seek sanctions against Plaintiff or Plaintiff's counsel. Additionally, these defendants have not provided any basis for the Court to impose sanctions within their 12(b)(2) Motion to Dismiss. Defendants simply stated in the conclusion that that they "anticipate filing after the expiration of the 21-day safe harbor afforded under Rule 11." However, it is a day that has not yet and may never come: Defendants have not submitted any draft motion to Plaintiff as required by Rule 11. Simply threatening to file such a motion in the conclusion of the Motion to Dismiss does not satisfy this requirement under Sixth Circuit precedent. *Ridder*, 109 F.3d at 294.

Because Defendants failed to adhere to Rule 11, this Court should deny Defendants' request for sanctions.

**2. Amy and Roy Chanson's Declarations Are Contradicted by Facts in Plaintiff's Possession.**

The United States Court of Appeals for the Sixth Circuit's standard for granting sanctions is "whether the attorney's conduct was reasonable under the circumstances." *Clark,* 748 F.Supp.2d at 797-98 (S.D. Ohio 2010), *quoting Ridder*, 109 F.3d at 293 (6th Cir. 1997). In challenging a motion for sanctions under Rule 11, the non-moving party must show that it conducted reasonable pre-suit investigation. *Id.* While sanctions under Rule 11 are improper in this case for the reasons stated above, it is important to let the record reflect the wild divergence between Roy and Amy Chanson's claims and evidence long pre-dating this lawsuit regarding their involvement in the YouGotPosted site.

While Defendants Roy and Amy Chanson deny any involvement with YouGotPosted (*see* Defendants Roy and Amy Chanson's Motion to Dismiss, ECF #9), prior to filing any suits against Defendants, an attorney for the one of the law firms representing Plaintiff spoke to the Defendants in this action, including Roy and Amy Chanson. Roy and Amy Chanson stated that they not only knew about the website, but *actively assisted with its operations and administration*. *See* Declaration of Ronald D. Green, ¶ 12. Defendants Roy and Amy Chanson also were involved with the proposed settlement agreement for a different lawsuit, brought by a different plaintiff, against some of the same Defendants as the instant suit regarding the same website. Decl. of Green, ¶ 4.

Based on his conversations with Roy and Amy Chanson, the plaintiff in that trademark dispute, ViaView Incorporated, believed that Roy and Amy convinced their son to set aside the agreement he had already executed for the previous suit. Decl. of Green, ¶7 and Decl. of McGibney, ¶8.   Because Roy and Amy Chanson's prior interactions with Plaintiff's current counsel, albeit in the context of a separate case, Plaintiff had a more than reasonable belief that Defendants Roy and Amy Chanson were involved with the website prior to filing the instant suit.  Indeed, Plaintiff had facts, in the form of Roy and Amy Chanson's own statements and actions long before this suit was commenced, to support their addition as parties.   Based on these pre-existing party admissions, the claims against Mr. and Mrs. Chanson have a basis to be pursued in both fact and law – despite their *post hoc* rationalizations before this Court.   On this basis, Plaintiff's inclusion of Roy and Amy Chanson as defendants in the Complaint was based upon a reasonable pre-suit investigation that revealed their own admitted involvement in the site's operations.[8] As such, although Roy and Amy Chanson's request for sanctions under Rule 11 is so procedurally defective that the Court need not consider it, Plaintiff respectfully requests that Defendant Roy and Amy Chanson's request for sanctions be denied on its merits as well.

### IV.  Conclusion

Plaintiff Doe respectfully requests this Court hereby deny Defendants Roy and Amy Chanson's Motion to Dismiss for Lack of Personal Jurisdiction.  Plaintiff has met her burden of establishing a *prima facie* case of personal jurisdiction over Chanson.  Ohio

---

[8] Furthermore, before the suit commenced, the Plaintiffs' attorneys communicated the fact that this case would be coming – and attempted to engage the Chansons in pre-suit negotiations.  They ignored those attempts.

has specific personal jurisdiction over Roy and Amy Chanson because, as admitted editors of the YouGotPosted website, they purposefully availed themselves of the privilege of conducting business in Ohio; second, Plaintiff's cause of action arose from Roy and Amy Chanson's activities with the state; and third, Roy and Amy Chanson's tortious acts had a substantial enough connection with Ohio to make exercise of jurisdiction reasonable. Finally, Ohio's long-arm statute permits personal jurisdiction because Roy and Amy Chanson's actions caused Plaintiff's injuries within the state.

Dated: August 18, 2013                               Respectfully submitted,


                                                     /s/ Marc J. Randazza
                                                     Marc. J. Randazza
                                                     Randazza Legal Group
                                                     3625 S. Town Center Drive
                                                     Las Vegas, NV 89135
                                                     888-667-1113
                                                     305-437-7662 (fax)
                                                     ecf@randazza.com

                                                     /s/ H. Louis Sirkin
                                                     H. Louis Sirkin, Ohio Bar No. 24573
                                                     Santen & Hughes, LLP
                                                     600 Vine Street, Suite 2700
                                                     Cincinnati, OH 45202
                                                     513-721-4450
                                                     HLS@santen-hughes.com



*Attorneys for Plaintiff,*
*Jane Doe*

## Certificate of Service

Pursuant to the Federal Rules of Civil Procedure 5(b), I hereby certify that the

foregoing document was served upon all other parties via U.S. Mail:

Roy and Amy Chanson
2 Columbia Place
Princeton Junction, NJ 08550-1816

Eric S. Chanson
2 Columbia Place
Princeton Junction, NJ 08550-1816

Blue Mist Media LLC
d/b/a YouGotPosted
c/o Domains by Proxy , LLC
1747 N. Northsight Blvd.
Suite 111, PMB 309
Scottsdale, AZ 85260

Kevin Bollaert
1765 Garnet Avenue 27
San Diego, CA 92109

Dated: August 19, 2013

Employee, Randazza Legal Group

21